¶ 40 In *Application of Oklahoma Capitol Improvement Authority*, 1960 OK 207, 355 P.2d 1028, the payments made by the state agencies were used to retire the debt. Today under § 301 payments made by the state agencies are used to retire the debt. The Legislature and this Court has followed this type of analysis for more than forty years, and the Legislature has relied upon this interpretation in creating financing for the needs of state government.

¶ 41 This Court does not, as a rule, inquire into the construction of a constitutional provision or the constitutionality of a statute when this question was ruled on in previous decisions by a court of last resort, unless such previous decisions are manifestly erroneous, and there are cogent reasons for overruling them; and this is especially true where such decisions have been long relied on as authoritative. *In re Real Property of Integris Realty Corp.*, 2002 OK 85, ¶ 12, 58 P.3d 200, 204–205, *quoting, Oklahoma County v. Queen City Lodge No. 197, I.O.O.F.*, 1945 OK 55, 156 P.2d 340. Thus, I would deny the petitioners' request for this Court to overrule its opinions on this subject.

### III. Conclusion

¶ 42 The Court should use a definition for "purpose" in Art. 10 § 16 for borrowing that would also satisfy the purpose requirement in Art. 5 § 55 for appropriations. Capital projects may utilize both appropriated moneys and bond-funding, and the same requirement for the separate funding sources should be construed similarly. The history of funding for bonds in this State shows that bonds are approved when lump-sum amounts are provided to a particular state entity for capital expenditures.

¶ 43 The Court may approve of the bonds in this proceeding without hypothesizing

2003 OK 85

**No. 97,935.**

Supreme Court of Oklahoma.

Oct. 14, 2003.

W.A. Drew Edmondson, Attorney General for the State of Oklahoma. Lynn C. Rogers, Assistant Attorney General, Gary M. Bush, Oklahoma City, OK, and Douglas F. Price, Stillwater, OK, for applicant.

Richard James, Stroud, OK, for protestant John Cassidy, Jr.

Protestant Jerry R. Fent, pro se, Oklahoma City, OK.

Protestant Edwin Kessler, pro se, Norman, OK.

BOUDREAU, Justice:

¶ 1 In 73 O.S.Supp.1998, § 301, the Oklahoma Legislature authorized the Oklahoma Capitol Improvement Authority (OCIA) to issue obligations not to exceed $325 million dollars for projects as designated by the Legislature. By amendment to § 301,[1] the second regular session of the 47th Oklahoma Legislature in 2000 listed twenty-seven state agencies, including the Oklahoma Capitol Complex and Centennial Commission (Centennial Commission),[2] and allocated the pro-

---

1. 2000 Okla.Sess.Laws, ch. 376, § 1.

2. The Oklahoma Centennial Act, 73 O.S.2001, §§ 98, et seq., enacted in 1996 Okla.Sess.Laws, ch. 358, created the Centennial Commission. 73 O.S.2001, § 98.2(A)(1). The Centennial Commission consists of 22 voting members, any 8 of which constitutes a quorum, and 16 ex officio members. 73 O.S.2001, § 98.2(A)(5). The voting members consist of the following: five persons appointed by the Governor, five appointed by the Senate Pro Tempore, five appointed by the

Speaker of the House, six mayors and the executive director of the Oklahoma Humanities Council. 73 O.S.2001, § 98.2(A)(1) and (2). The ex officio members are the Governor, all living former Governors, the Senate Pro Tempore and two senators, the Speaker of the House and two House members, the chair of the State Capitol Preservation Commission, the executive director of the Oklahoma Arts Council, the executive director of the Oklahoma Historical Society, the Capitol Architect and Curator, the director of the Oklahoma Indian Affairs Commission, and the

ceeds of the second half of the authorized obligations in the total amount of $175 million to those state agencies. In extraordinary session, the 47th Oklahoma Legislature again amended § 301,[3] increasing the allocation to the Centennial Commission to $5,470,101.00, among other changes.

¶ 2 Pursuant to the authority granted it in the 2000 amendments to § 301, the OCIA resolved to issue state facilities revenue bonds in the amount of $5.5 million to pay a portion of the cost of the Oklahoma State Capitol Dome project. The resolution is premised on the OCIA's finding that in the 2000 amendments to § 301, the Legislature "determined to provide a portion of the funding of the completion of the Oklahoma State Capitol Dome (the 'Project') for the Oklahoma Capitol Complex and Centennial Commission and the Department of Central Services (the 'Agencies') and to that end, has directed the Oklahoma Capitol Improvement Authority to issue revenue bonds for such purposes".

¶ 3 Pursuant to 73 O.S.2001, § 160, the OCIA filed an application in this Court seeking approval of the proposed $5.5 million bond issue. Three separate protests presented multiple constitutional challenges to the authorizing statute and the bond issuance process. The dispositive issue is whether the 2000 amendments to § 301 express legislative purpose to provide $5.5 million for completion of the Capitol Dome project as required by the purpose-of-borrowing provision in Okla. Const., art. 10, § 16.[4]

¶ 4 In a separate application filed in this Court on the same day this application was filed, the OCIA sought approval of a proposed bond issue in the amount of the entire second half of the obligations authorized in the 2000 amendments to § 301. Our opinion in that proceeding, *Application of the Oklahoma Capitol Improvement Authority*, No. 97,936, found that the 2000 amendments to § 301 do not specify the purposes for which the proposed bond proceeds may be used and concluded that the 2000 amendments to § 301 do not satisfy the purpose-of-borrowing requirement in Okla. Const., art. 10, § 16. We withheld approval of the $175 Million state facilities revenue bond proposal. *Application of the Oklahoma Capitol Improvement Authority*, 2003 OK 59, 80 P.3d 109, rehearing denied September 8, 2003.

¶ 5 As we recognized in *Application of the Oklahoma Capitol Improvement Authority*, *supra.* at ¶ 22, the 2000 amendments to § 301 do not describe a single project to be funded by the borrowing of money. The statute merely identifies agencies and lists amounts of borrowed money to be allocated to the agencies. Here, § 301(A)(16)(d) identifies the Centennial Commission and allocates $5,470,101.00 of borrowed money to the Commission. The statute does not, however, designate the Capitol Dome project or any other project as the purpose for authorizing the borrowing of nearly $5.5 million. Because the statute does not specify a project for which the borrowed money is to be expended, our opinion in *Application of the Oklahoma Capitol Improvement Authority*, *supra.* controls the dispositive issue. Accordingly, the proposed bonds are not properly authorized as required by Okla. Const., art. 10, § 16.

---

executive director of the Oklahoma Tourism and Recreation Commission.

The Centennial Commission will be in existence until July 1, 2008. 73 O.S.2001, § 98.2(A)(1). It is charged with the development and implementation of a statewide master plan for commemorating the centennial of Oklahoma's admission to statehood in 1907 and beautification of the Capitol Complex in time for the state's centennial in the year 2007. 73 O.S.2001, §§ 98.1 and 98.3. The Act specifies several "projects and activities" which the Centennial Commission may include in the master plan. Although the Act provides that the Centennial Commission may include "Interior and exterior

renovations of the State Capitol" in the master plan, 73 O.S.2001, § 98.3(B), it does not provide that the Centennial Commission shall be responsible for the Capitol Dome project.

3. 2000 Okla.Sess.Laws, 1st Extraordinary Sess., ch. 7, § 1.

4. Article 10, § 16 of the Oklahoma Constitution provides: "All laws authorizing the borrowing of money by and on behalf of the State, county, or other political subdivision of the State, shall specify the purpose for which the money is to be used, and the money so borrowed shall be used for no other purpose."

APPLICATION FOR APPROVAL OF $5.5 MILLION OKLAHOMA CAPITOL IMPROVEMENT AUTHORITY STATE FACILITIES REVENUE BONDS, SERIES 2002B DENIED.

WATT, C.J., OPALA, V.C.J., and HODGES, LAVENDER, HARGRAVE, and WINCHESTER, JJ., concur.

SUMMERS, J., dissents.

KAUGER, J., not participating.

